ther, and say, the wages of the shipwrights had no reference to a voyage to be performed. They had no interest or concern whatever in the vessel after she was delivered to the party for whom she was built, and they were bound to rely on their contract.

Looking at the whole case, I am of the opinion that the supreme court in that case decided, and intended to decide, that a contract for the building of a ship is not a maritime contract. Judge Wilson took the same view of the question in the case of The Revenue Cutter [Case No. 11,713]; but Judge Sprague, in the case of The Richard Busteed [Id. 11,764], held that a contract for the building of a sea-going vessel was maritime, and came to the conclusion that the contrary opinion, expressed in the Case of The Jefferson, might be regarded as the reasoning or dictum of the judge who delivered the opinion. Since the last-named case was decided, the same question has more than once come before the supreme court, and on every occasion the decision has been that such contracts are not maritime. Such was the view of the court in the case of Roach v. Chapman, 22 How. [63 U. S.] 129, where the opinion of the court was given by Mr. Justice Grier. Proceedings had been instituted in the district court for the Eastern district of Louisiana, in that case against the steamer Capitol, to enforce a lien for a part of the price of the engine and boilers, which had been furnished at Louisville, in the state of Kentucky, where she was built. Libellants claimed a lien under the general admiralty law and under the law of the state. Plea was filed to the jurisdiction of the court, and the court say, a contract for building a ship or supplying engines, timber, or other material for her construction, is clearly not a maritime contract, and that any former dicta or decisions which seemed to favor a contrary doctrine were overruled by this court in the case of The Jefferson, 20 How. [61 U. S.] 400. During the same session of the court, the same question was again presented in the case of Morewood v. Enequist, 23 How. [64 U. S.] 494. and was again decided in the same way. On that occasion the court, after referring to the Case of The Jefferson, go on to say that the court decided in that case that a contract to build a ship is not a maritime contract; and though in countries governed by the civil law, courts of admiralty may have taken jurisdiction of such contracts, yet that in this country they are purely local, and governed by state laws, and should be enforced by the state tribunals. Regarding these decisions as authority in this court, it is not possible to sustain the views of the libellants in these cases.

Contracts for repairs and supplies are maritime contracts. and it is for that reason that libels for such claims, if furnished to a foreign ship or for a ship in a foreign port, may be filed against the ship and freight in rem. or against the master or owner in personam. Libels in rem in such cases are based upon a maritime lien, which arises as an implication of law. Such implication, however, does not arise in cases of domestic ships, but under the old admiralty rule the like proceeding in rem was allowed in such cases where a lien was given by the local law. Suits in personam may still be prosecuted in such cases under the new admiralty rule, but not in rem, as under the previous rule.

Pending cases or such as were brought before the 1st of May, 1854, when the new rule went into operation, are unaffected by the repeal of the old rule. The St. Lawrence, 1 Black. [66 U. S.] 522. Explanations touching the repeal of that rule and the effect of that repeal are so fully given in the case last referred to, that it seems unnecessary to say more upon the subject, especially as neither the old nor new rule has any application to the case under consideration.

It was suggested at the argument that the objection to the jurisdiction had been waived, but it is the settled doctrine of the federal courts that consent cannot give jurisdiction, nor can the objection be waived. Cutler v. Rae, 7 How. [48 U. S.] 731. Having come to the conclusion that the objection to the jurisdiction of the court must prevail, it is unnecessary to examine the other question. The respective decrees of the district court dismissing the libels are affirmed, but without costs.

---

YOUNG v. The ORPHEUS. See Case No. 8,330.

---

# Case No. 18,170.

## YOUNG v. PALMER.

### [2 Cranch, C. C. 625.] [1]

Circuit Court, District of Columbia. Dec. Term, 1825.

#### SPECIAL BAIL.

In an action upon the case for selling negroes out of the neighborhood contrary to agreement, the defendant will not be held to special bail, upon an affidavit stating the breach of the agreement, and the belief of the plaintiff that he has sustained damage to a certain amount.

This was an action upon the case upon a special contract of sale of slaves by the plaintiff to the defendant, in which the defendant promised not to sell them out of the neighborhood, &c., whereby the plaintiff was induced to sell them for less money; but the defendant sold them, &c., contrary to his agreement.

The affidavit stated that the plaintiff "believes" he could have sold them for four hundred dollars more than he got for them from the defendant.if he had sold them unconditionally, and "considers" that he has

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

sustained damage in the sum of four hundred dollars.

THE COURT (THRUSTON, Circuit Judge, doubting) permitted the defendant to appear without special bail.

## Case No. 18,171.

### YOUNG et al. v. PORTER et al.

[3 Woods, 342.] [1]

Circuit Court, W. D. Texas. June Term, 1878.

EQUITY SUIT FOR LAND—SUFFICIENCY OF COMPLAINANT'S TITLE—EQUITABLE CLAIM.

1. Where complainants in a bill in equity to recover lands of which the defendants were in possession, claimed only an equitable title thereto, and did not set up any facts tending to show that the defendants were in any way affected by their equity, *held*, that the bill could not be maintained.

[Cited in Lamb v. Farrell, 21 Fed. 12.]

2. The bare fact that parties who hold an equitable title to land cannot sue at law, does not give a court of equity jurisdiction.

[Cited in Fussell v. Gregg, 113 U. S. 554, 5 Sup. Ct. 633.]

3. The remedy of parties so situated is first to obtain the legal title, and then bring their action at law against the parties in possession of their land.

[Bill by John S. Young against James Porter.] Heard upon demurrer to the bill for want of equity.

D. E. Thomas, for complainants, cited Jackson v. Morse, 16 Johns. 197; Bogert v. Perry, 17 Johns. 350; Fenn v. Holme, 21 How. [62 U. S.] 481; Tyler, Ej. 43, 44.

A. J. Peeler, for defendants, cited Orton v. Smith, 18 How. [59 U. S.] 263; Herrington v. Williams, 31 Tex. 448.

BRADLEY, Circuit Justice. The bill in this case is filed to recover 640 acres of land, of which the defendants are in possession. The complainants admit that they have not the legal title to the land, but they claim the equitable title; and it is because they have only the equitable title, and cannot maintain an action at law, that they come into a court of equity. They do not state that the defendants have the legal title or that they obtained possession under any person who had it. They do not state any facts going to show that the defendants are in the least affected by the equity which they, the complainants, set up. They only state that the defendants have wrongfully possessed themselves of the land, and are cutting timber and committing other waste thereon. The bill is, in fact, a mere ejectment bill, the only pretense for bringing which in a court of equity is that the complainants cannot maintain an action at law.

We entirely agree with the complainants' counsel in the proposition that the complainants could not maintain an action at law for

the recovery of the land. But that does not prove that they can maintain a suit in equity for that purpose. They cannot maintain a suit which is the equivalent of an ejectment, merely because their title is only an equitable one. They must show that the defendants inequitably withhold the possession from them before they can do this. They must show some connection between the defendants and themselves. If the defendants had procured the legal title with notice of the complainants' equities, or were in any other respect guilty of fraud or want of equity towards the complainants in detaining the possession from them, then the latter might probably come into equity for relief. But they have not shown any such state of things. The complainants ask: If we cannot proceed either at law or in equity, what shall we do? The answer is plain: They must first take those proceedings against Alberty or his representatives or assigns which are necessary to obtain the legal title; and having obtained that, then they can bring trespass to try title against the defendants. If they say they cannot find Alberty, they must take those proceedings which the law gives to bring him into court by advertisement, or other constructive service. At all events, a suit in chancery cannot be maintained against the defendants, unless something more is shown against them than is shown in this bill. The bill must be dismissed.

## Case No. 18,172.

### YOUNG v. POTT.

[4 Wash. C. C. 521.] [1]

Circuit Court, E. D. Pennsylvania. April Term, 1825.

CROSS BILL FOR DISCOVERY—JURISDICTIONAL FACTS.

After the cause on the original bill was set for hearing, the defendant was informed that the plaintiff was a nominal one, and that the real plaintiff was a citizen of the same state with the defendant. He immediately filed a cross bill charging this and asking a discovery. The original suit ought not to be heard until the cross bill is answered.

The bill states that the plaintiff and defendant entered into a written agreement for a purchase, by the former, from the latter, of a certain tract of land, for which he was to receive a good title, and was to pay a certain sum by instalments. That the plaintiff was put into possession, but the defendant having refused to convey the land according to his contract, and having brought an ejectment against the plaintiff to recover the land, which was removed from the state court to this, he prays for a specific performance, and for an injunction. No injunction was applied

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]